In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00235-CV
_____

**MENTAL HEALTH MENTAL RETARDATION AUTHORITY OF
HARRIS COUNTY, Appellant**

**V.**

**MILLET HARRISON JR., Appellee**

**On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Cause No. 66306**

**MEMORANDUM OPINION**

Mental Health Mental Retardation Authority of Harris County ("MHMRA")

challenges the trial court's order directing it to provide an outpatient treatment plan

and locate a suitable facility for Millet Harrison Jr. Harrison had been found not

guilty of murder by reason of insanity in 1994, and in October of 2014, this Court

determined that the evidence was insufficient to demonstrate that Harrison

continued to fit the criteria for involuntary inpatient commitment, and we

1

remanded the cause to the trial court for further proceedings consistent with our opinion. *See Harrison v. State*, No. 09-14-00099-CV, 2014 WL 5490942, at *8 (Tex. App.—Beaumont Oct. 30, 2014, no pet.) (mem. op.). We reverse the trial court's order and remand this cause for further proceedings consistent with this opinion.

BACKGROUND

In 1994, Millet Harrison Jr. was found not guilty by reason of insanity for the murder of his mother and was committed to a mental health facility. *Harrison v. State,* 179 S.W.3d 629, 631 (Tex. App.—Beaumont 2005, pet. denied). The trial court renewed Harrison's involuntary inpatient mental health commitment each year. *Harrison*, 2014 WL 5490942, at *1. On October 30, 2014, this Court held that the evidence was legally and factually insufficient to demonstrate that Harrison continued to meet the criteria for involuntary inpatient commitment, and we reversed the trial court's order of commitment and remanded the cause for further proceedings. *Id*. at *8.

Rusk State Hospital and Spindletop MHMR recommended court-ordered outpatient treatment for Harrison in Harris County. The trial court ordered that Harrison could be released from Rusk State Hospital when acceptable outpatient treatment and housing arrangements had been made. On March 25, 2015, Dr.

2

Steven Schnee, Executive Director of MHMRA, wrote a letter to the trial court, in which Schnee stated as follows:

> Please accept this letter as formal notice that MHMRA of Harris County is unable to accept Mr. Harrison's county of residence transfer to Harris County and will not be able to accept him into outpatient care under our auspices. The strain on our limited resources to address our local residents' needs does not accommodate accepting Mr. Harrison into our outpatient services at this time.

Schnee indicated in the letter that he was unable to attend the hearing scheduled for that day, but would be available to speak with all parties by phone. On April 6, 2015, the trial judge wrote a letter to Schnee, in which the trial judge requested that MHMRA reconsider accepting Harrison. In the letter, the trial judge noted that Harrison has been a lifelong resident of Harris County, and he explained that the killing of Harrison's mother occurred while Harrison was visiting Beaumont. The trial judge also noted that all of Harrison's relatives, who desire to help Harrison during his treatment, reside in Harris County.

On April 13, 2015, the trial court entered an order stating that MHMRA had refused to accept Harrison and Spindletop had been unable to obtain an outpatient residential care facility for Harrison and ordering that Harrison remain at Rusk "until or unless an acceptable residential outpatient treatment facility in this or some other jurisdiction can be located that will not only provide necessary

3

treatment to the defendant but also insure public safety." On May 8, 2015, the trial judge again wrote a letter to Schnee requesting that MHMRA reconsider its refusal to accept Harrison for outpatient treatment.

The trial judge signed an order that required MHMRA to "present to this Court within 30 days, a proposed outpatient treatment plan as well as a suitable facility that will insure public safety." In its order, the trial court stated that "at the time the Defendant was found not guilty by reason of insanity, the Defendant was and had been for many years a full time resident of Harris County, Texas." MHMRA then filed a notice of appeal. After MHMRA appealed, Schnee wrote a letter to the trial court, in which Schnee stated, "[r]egardless of our disagreement regarding Mr. Harrison's county of residence at the time of the offense, our consent must be obtained before placement into outpatient [treatment], as MHMRA is not located in the same region [as] the committing court." In the letter, Schnee reiterated that MHMRA was unable to accept Harrison into its outpatient services.

MHMRA filed a motion for rehearing, in which it asserted that it did not receive notice of the hearing that preceded entry of the order. In its motion, MHMRA contended that "for Mr. Harrison to be placed in Harris County for outpatient treatment, as opposed to Jefferson County where the committing court

4

of continuing jurisdiction is located, this Court must first obtain MHMRA's consent." The trial court then entered another order, in which it stated that MHMRA's filing of a notice of appeal deprived the trial court of authority to consider subsequent matters, but noted that if the trial court did have such authority, the trial court would deny MHMRA's motion for reconsideration because all of the legal authorities MHMRA cited deal with the Texas Health and Safety Code, but, in the trial court's view, the pertinent legal provision governing a defendant found not guilty by reason of insanity is Article 46C.264 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 46C.264(a) (West 2006) ("The court may order the outpatient or community-based treatment and supervision to be provided in any appropriate county where the necessary resources are available."). The trial court also noted in its order that MHMRA "has refused consent, but the refusal must come from the provider, and [MHMRA] has never responded with provider information in a plan so that consent or refusal could be determined."

## ANALYSIS

In three appellate issues, MHMRA argues (1) the trial court's order is improper because it did not comply with the procedural requirements of the Texas Mental Health Code, (2) the trial court lacked authority to order MHMRA to

5

provide outpatient mental health services to Harrison, and (3) the trial court was required to obtain MHMRA's consent prior to ordering MHMRA to provide an outpatient treatment plan for Harrison. Because issue three is dispositive, we address it first.

Because statutory construction is a question of law, we review the trial court's order *de novo*. *Reinke v. State*, 348 S.W.3d 373, 376 (Tex. App.—Austin 2011, *aff'd*, *Ex parte Reinke*, 370 S.W.3d 387 (Tex. Crim. App. 2012)); *see also Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655-56 (Tex. 1989). Our objective in construing a statute is to determine and give effect to the Legislature's intent. *In re Evans*, 130 S.W.3d 472, 478 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding). Whenever possible, we must ascertain the Legislature's intent from the language the Legislature used in the statute and not look to extraneous matters. *Id.*

As stated above, Harrison killed his mother in 1994; therefore, article 46.03 of the Texas Code of Criminal Procedure[1] and the Mental Health Code provisions

---

[1]*See* Act of May 18, 1977, 65th Leg., R.S., ch. 596, § 2, 1977 Tex. Gen. Laws 1458, 1467-69 (amended 1983, 1989, 2003). The Legislature repealed article 46.03 in 2005 and amended the Code of Criminal procedure to add "Chapter 46C. Insanity Defense." The 2005 amendment applies "only to an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed,

in effect at the time of Harrison's offense are applicable to proceedings concerning

Harrison.[2] *Harrison v. State*, 239 S.W.3d 368, 373 (Tex. App.—Beaumont 2007, no pet.); *Harrison v. State*, 179 S.W.3d at 630 n.1.

> Former article 46.03(4)(d)(1) stated as follows:
>
> If a defendant is found not guilty by reason of insanity in the trial of a criminal offense and the court determines that the defendant committed an act, attempt, or threat of serious bodily injury to another person, the trial court shall retain jurisdiction over the person so acquitted and shall order such person to be committed to the maximum security unit of Rusk State Hospital or the maximum security unit of any other facility designated by the Texas Department of Mental Health and Mental Retardation until such time as he is eligible for release pursuant to this subsection or is eligible for transfer to a nonsecurity facility pursuant to Subsection (b) of this section. The court shall order that an examination of the defendant's present mental condition be conducted and that a report be filed with the court.

Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640, 2643 (repealed 2005) (current version at Tex. Code Crim. Proc. Ann. art. 46C.261

---

and the former law is continued in effect for that purpose." Act of May 27, 2005, 79th Leg., R.S., ch. 831, §§1, 2, 5, 2005 Tex. Gen. Laws 281, 2853-54.

[2]In a footnote in a previous opinion, we erroneously referenced article 46C.263(c). *Harrison v. State*, No. 09-14-00099-CV, 2014 WL 5490942, at *8 n.2 (Tex. App.—Beaumont Oct. 30, 2014, no pet.) (mem. op.). Article 46C applies only to offenses committed prior to its effective date of September 1, 2005. Act of May 27, 2005, 79th Leg., R.S., ch. 831, § 5, 2005 Tex. Gen. Laws 2841, 2853-54.

(West 2006)). With respect to outpatient supervision, former art. 46.03(4)(d)(4) provided as follows, in pertinent part:

> If, at the time of the evaluation as provided in Subdivision (1) of this subsection prior to the hearing on involuntary commitment, the report of the defendant's present mental condition includes a recommendation that the person acquitted by reason of insanity meets the criteria for involuntary commitment but that such treatment or care can be provided on an out-patient basis provided he participates in a prescribed regimen of medical, psychiatric, or psychological care or treatment, and the court finds that the acquitted person does meet those criteria, the court may order the acquitted person to participate in that prescribed regimen of medical, psychiatric, or psychological care or treatment. The court may at any time modify or revoke the out-patient regimen of medical, psychiatric, or psychological care or treatment pursuant to the requirements of the Mental Health Code or the Mentally Regarded Person's Act. . . .

Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640, 2644-45 (repealed 2005) (current version at Tex. Code Crim. Proc. Ann. art. 46C.261 (West 2006)). Finally, subsection (5) of former article 46.03(4)(d) provided as follows, in pertinent part:

> A person acquitted by reason of insanity and committed to a mental hospital or other appropriate facility . . . may only be discharged by order of the committing court in accordance with the procedures specified in this subsection. If at any time prior to the expiration of a commitment order the superintendent of the facility to which the acquitted person is committed determines that the person has recovered from his mental condition to such an extent that . . . treatment or care can be provided on an out-patient basis provided he participates in a prescribed regimen of medical, psychiatric, or psychological care and treatment, the director of the facility shall promptly file a certificate to that effect with the clerk of the court that

8

ordered the commitment. . . . Upon receipt of such certificate or upon the expiration of a commitment order, the court shall order the discharge of the acquitted person or on the motion of the district or county attorney or on its own motion shall hold a hearing, prior to the expiration of the commitment order, conducted pursuant to the provisions of the Mental Health Code or the Mentally Retarded Person's Act as appropriate, to determine if the acquitted person continues to meet the criteria for involuntary commitment and whether an order should be issued requiring the person to participate in a prescribed regimen of medical, psychiatric, or psychological care or treatment on an out-patient basis as provided in Subdivision (4) of this subsection. . . .

Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640, 2644-45 (repealed 2005) (current version at Tex. Code Crim. Proc. Ann. art. 46C.261 (West 2006)).

Subsections (1), (4), and (5) of former article 46.03(4)(d) explicitly referenced the Mental Health Code with respect to the regimen of medical, psychiatric, or psychological outpatient ordered by the trial court. Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640, 2643-45 (repealed 2005) (current version at Tex. Code Crim. Proc. Ann. art. 46C.261 (West 2006)). The version of section 574.037(a) of the Mental Health Code that was in effect at the time of Harrison's offense provides as follows:

(a) The court, in an order that directs a patient to participate in outpatient mental health services, shall identify a person who is responsible for those services. The person identified must be the facility administrator or an individual involved in providing court-ordered outpatient services. *A person may not be designated as responsible for the ordered services*

> *without the person's consent unless the person is the facility administrator of a department facility or the facility administrator of a community center that provides mental health services in the region in which the committing court is located.*

Act of April 29, 1991, 72nd Leg., R.S., ch. 76, § 1, sec. 574.037(a), 1991 Tex. Gen. Laws 515, 590 (current version at Tex. Health & Safety Code Ann. § 574.037(a) (West Supp. 2014)) (emphasis added). Section 531.002(16) of the Texas Health and Safety Code defines "region" as "the area within the boundaries of the local agencies participating in the operation of community centers established under Subchapter A, Chapter 534." Tex. Health & Safety Code Ann. § 531.002(16) (West 2010).[3]

The Court takes judicial notice that MHMRA's offices are located in Houston, Texas. Although the trial court's order does not explicitly designate Schnee as responsible for presenting a proposed outpatient plan and a suitable facility, the order states that it is to be served upon the Executive Director of MHMRA. Because the trial court's order required the agency of which Schnee is Executive Director to present a proposed outpatient plan and a suitable facility for Harrison, and stated that the order must be served upon Schnee, we conclude that section 574.037(a) of the Mental Health Code is apposite. *See* Tex. Health &

---

[3]Because subsequent amendments of section 531.002 do not affect subsection (16), we cite to the current version of the statute.

10

Safety Code Ann. § 574.037(a). Because MHMRA is not within the region in which the committing court is located and the trial court did not obtain MHMRA's consent before designating it (and, by extension, Schnee) as responsible for presenting a proposed outpatient plan and a suitable facility for Harrison, the trial court's order does not comply with the Mental Health Code. *See id.*; *In re Evans*, 130 S.W.3d at 481-84. We sustain issue three, and we need not address issues one and two, as they would not result in greater relief. *See* Tex. R. App. P. 47.1. Accordingly, we reverse the trial court's order and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on September 29, 2015
Opinion Delivered October 29, 2015

Before McKeithen, C.J., Kreger and Johnson, JJ.